**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: November 12, 2020**

_____
**Hon. G. Michael Halfenger**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WISCONSIN

In re:

**ENGINEERED PROPULSION**                Case No. 20-11957-gmh
**SYSTEMS, INC.,**                                    Chapter 11

             Debtor.

## ORDER APPROVING BID PROCEDURES; APPROVING DATES AND DEADLINES RELATING TO THE DEBTOR'S SALE PROCESS; GRANTING RELATED RELIEF; AND NOTICE OF HEARING

A preliminary hearing on the Debtor's Motion for Order: 1) authorizing the Debtor to sell substantially all of its assets in the manner more fully set forth below; 2) approving the proposed Bid Procedures that will govern the sale process; 3) establishing dates and deadlines related to the sale process; and, 4) granting related relief (the "Motion", located at Docket #155), having come before this Court to be heard on November 9, 2020; and, appearances having been made as noted on the

record therein; and, it appearing that no other or further notice need be provided to any party; and, it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; and, the pending Objections related to items 2) and 3), above, having been argued by the parties and resolved on the record, as set forth below; and, after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that**,

1.    The portion of the Motion relating to the approval of the proposed Bidding Procedures, as revised in accordance with the Court's findings and the agreements of the parties, a copy of which is attached to this Order, is hereby granted, following the Objections to such Bid Procedures being resolved on the record or overruled, as follows:

   A.    The originally proposed bid procedure paragraph (G)(e)(vi) is replaced with:

      "vi.    proposes to pay in full the allowed secured claims of First National Community Bank, US Bank Equipment Finance, Wisconsin Economic Development Corporation (via the Wisconsin Department of Administration), and the DIP Lender, all calculated as of the date of the closing;," and,

   B.    The originally proposed bid procedure paragraph (G)(e)(vii) is renumbered to (viii); and,

C.   A new paragraph (G)(e)(vii) is added to the proposed bid procedures, as follows:

"vii.  is at least equal in value to $6.5 million (which shall not necessarily be deemed to be a higher and better bid than the Stalking Horse Bid), provided that such amount is sufficient to comply with sub-section vi., hereof, or such higher sum as may be necessary to minimally comply with sub-section vi., hereof;", and,

D.   Additional changes and revisions to the Bidding Procedures to eliminate references to the "Consultation Party", to correct addresses, and to revise dates, as ordered by the Court.

2.   The 11 U.S.C. 363(k) issue raised in the Objection of Chippewa Valley Angel Investors Network, LLC, Claire Johnson, and Douglas Larson, and also contained in one form or another in other Objections filed with the Court (hereinafter, collectively, the "CVAIN 363(k) Objection", located at Docket #188, at page 7), relating to a request by the Objectors to the Court to exercise its discretion to deny, "for cause", the ability of the stalking horse bidder to credit bid its secured claims in the pending sale based solely on an asserted prohibition to such credit bidding allegedly contained in the Intercreditor Agreement entered by and among the stalking horse bidder and the Objectors will proceed on an

expedited briefing and hearing schedule, as set forth more specifically below.

3.      Any party desirous of filing a formal Reply to the CVAIN 363(k) Objection solely on the issue of the impact of the Intercreditor Agreement on the ability of the stalking horse bidder to make a credit bid in the pending sale shall file said Reply with the Court not later than November 13, 2020, at 5:00 p.m. (CST).

4.      Any party desirous of filing a Sur-Reply on the issue described in paragraph 3, above, shall do so by filing it with the Court not later than the end of the day on November 16, 2020.

5.      The Court will hear arguments on this specific 11 U.S.C. §363(k) issue at a telephone conference call hearing to be held on November 20, 2020, at 3:00 p.m. (CST).

6.      The entry of this Order shall be without prejudice to the rights of the Debtor to request further modifications and guidance from the Court with regard to its sale motion.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

8.      The attached Amended Bid Procedure is approved and made the order of the Court.

9.      Notwithstanding anything to the contrary in the attached Bidding Procedures, the request for payment of a Break-Up Fee and Expense Reimbursement is reserved for later court approval.

10.      This order controls over any inconsistent provisions in the Bidding Procedures. The Bidding Procedures are only subject to immaterial modification by the Debtor. The Debtor is ordered to inform all interested parties concerning the sale process and this order.

# # #

## ENGINEERED PROPULSION SYSTEMS, INC.
### BIDDING PROCEDURES[1]

### A.    INTRODUCTION AND BACKGROUND

Engineered Propulsion Systems, Inc. ("EPS" or the "Debtor") is the debtor and debtor-in-possession in Case No. 20-11957, pending in the United States Bankruptcy Court for Western District of Wisconsin (the "Bankruptcy Court").

The Bankruptcy Court has authorized the Debtor to enter into an agreement for the sale of assets of the Debtor to EPS Engineered Propulsion Systems, Inc. (the "Stalking Horse") pursuant to that certain Asset Purchase Agreement (the "Asset Purchase Agreement" or the "APA" or the "Stalking Horse Bid") between EPS, named therein as Seller, and the Stalking Horse, named therein as Buyer, but subject to and in accordance with the process described in the procedures set forth below (the "Bidding Procedures").

The Auction (as defined below) will be managed by Steinhilber Swanson LLP ("SSLLP").  A description of the business assets that are to be sold is contained in a series of Schedules attached to the APA, as described in more detail below.

### B.    KEY DATES

The key dates for this process are as follows:

- November 8, 2020                 Sale Procedures Hearing
- November 20, 2020               Due dates for bids
- November 24, 2020               Auction
- November 30, 2020               Sale approval hearing
- December 4, 2020                 Closing

### C.    STALKING HORSE BID

On October 15, 2020, the Debtor entered into the APA with the Stalking Horse. A copy of the APA is available through SSLLP or EPS management, or may be reviewed on the Electronic Case Filing System maintained by the Bankruptcy Court as an attachment to the Notice of Motion and Motion for Orders: (1) authorizing Debtor to sell assets free and clear of liens, claims, interests and encumbrances; (2) authorizing assumption and assignment or rejection of unexpired leases and executory contracts;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement or the Sale Motion, as applicable, each as described and defined below.

(3) approving bidding procedures and auction; (4) approving the Break-Up Fee and Expense Reimbursement (both as defined below); (5) approving the form and manner of notice; and (6) scheduling further hearing that was filed on October 15, 2020 (the "Sale Motion").

The APA provides for payment to the Stalking Horse of, depending on the circumstances as set forth in the APA: (a) a break-up fee in the amount of $150,000 (the "Break-Up Fee"), and (b) an expense reimbursement in the amount of $250,000.00 (the "Expense Reimbursement" subject to court approval under 11 U.S.C. 503).

The Debtor is offering to sell assets to be acquired as described in the APA, free and clear of all liens, claims, interests, and other encumbrances pursuant to 11 U.S.C. 363(f).  Other interested bidders will have opportunities to bid on the assets described in the APA.

## D.    QUALIFIED BIDDER

To be allowed to participate in the sale process, to conduct due diligence, and to be entitled to submit a bid, a party interested in purchasing the assets must deliver to EPS management and SSLLP the following:

1.    a signed Confidentiality Agreement, in form and substance reasonably satisfactory to SSLLP and EPS management;

2.    evidence, satisfactory to SSLLP and EPS management demonstrating: (a) that the bidder has the financial ability to close the sale proposed by such bidder in its bid; and, (b) no further corporate action by the bidder is required for it to consummate its purchase as proposed by its bid;

3.    audited (if in existence) or reviewed financial statements and/or other forms of financial disclosure acceptable to SSLLP and EPS management demonstrating the putative bidder's financial ability to close; and,

4.    the Deposit (as defined below).

A party who submits all of these documents and the Deposit is deemed to be a Qualified Bidder (as defined below) who is eligible to submit a Qualified Bid (as defined below).

E.       DUE DILLIGENCE

Qualified Bidders may be offered the opportunity to conduct reasonable due diligence so long as the sale process is ongoing and until the Bid Deadline.

F.       **BID DEADLINE**

The deadline (the "Bid Deadline") for Qualified Bidders to submit a bid shall be November 20, 2020 at 4:00 o'clock p.m. CST, or such other later date and time to which the Bid Deadline may be extended by the Bankruptcy Court; provided, however, that such extended date shall be not later than November 23, 2020.

All bids must be submitted, on or prior to the Bid Deadline, to Michael Fuchs, President of EPS, 625 West Hangar Road, Hangar 11-16,New Richmond WI 54017, and via email to m.fuchs@eps.aero and to James D. Sweet, Steinhilber Swanson LLP, 122 West Washington Ave., Suite 850, Madison, Wisconsin 53703-2732 (Phone: 608-310-5501, Fax: 608-630-8991, jsweet@steinhilberswanson.com and to vgeorge@steinhilberswanson.com ).

G.       **QUALIFIED BID**

To be eligible to participate in the Auction, a Qualified Bidder must, on or prior to the Bid Deadline (as may be extended in accordance with Section F, above), submit to the parties listed in F., above, a package (the "Bid Package") that includes all of the following items:

a.    A signed Confidentiality Agreement in the form provided.

b.    A written acknowledgement that the Qualified Bidder agrees: (i) to all of the terms set forth in these Bidding Procedures; (ii) that its bid constitutes an irrevocable offer and is binding on the Qualified Bidder until the earlier of 48 hours after the sale of the assets has closed or thirty (30) days after the Sale Approval Hearing; and, (iii) to perform as a Back-Up Bidder (as defined below) in the event its Qualified Bid is not the Prevailing Bid (as defined below).

c.    Written evidence it has obtained authorization and approval from its Board of Directors (or comparable governing body) with respect to the submission of such Qualified Bidder's bid and acceptance of the terms of sale set forth in these Bidding Procedures, or representations that no such authorization or approval is required.

d. Financial statements and/or written evidence of an irrevocable financing commitment or other evidence, satisfactory to SSLLP and EPS management of the financial ability to close under its Asset Purchase Agreement within the deadline described above (provided, however, that the closing of the sale shall not be contingent in any way on the Qualified Bidder financing).

e. A signed Asset Purchase Agreement in the form of the Asset Purchase Agreement signed by the Stalking Horse "redlined" to show any modifications required by the Qualified Bidder, including any modifications to the schedules and exhibits (the "Competing Bid"), that:

   i. discloses of the identity of each entity submitting the Competing Bid or otherwise participating in the Competing Bid, and the complete terms of any such participation;

  ii. proposes to purchase the same (or in all material respects the same) assets to be acquired by the Stalking Horse; provided, however, that, a bid for other assets or another combination of assets may be treated as a Competing Bid by EPS management;

 iii. is without a contingency for financing or further due diligence and shall not contain a break-up fee or expense reimbursement;

 iv. includes a list of all unexpired leases and executory contracts to be assumed and assigned to the Qualified Bidder;

  v. is not subject to conditions, representations, or terms that the Debtor determines to be unacceptable;

 vi. proposes to pay in full the allowed secured claims of First National Community Bank, US Bank Equipment Finance, Wisconsin Economic Development Corporation (via the Wisconsin Department of Administration), and the DIP Lender, all calculated as of the date of the closing;

 vii. is at least equal in value to $6.5 million (which shall not necessarily be deemed to be a higher and better bid than the Stalking Horse Bid), provided that such amount is sufficient to comply with sub-section vi., hereof, or such higher sum as may be necessary to minimally comply with sub-section vi., hereof;

viii.   is not conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment;

ix.   does not contain any condition to closing of the transaction relating to the receipt of any third-party approvals (excluding required Bankruptcy Court and required CFIUS regulatory approval);

x.   expressly acknowledges and represents that the Qualified Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Assets and the proposed transaction prior to making its bid, (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets in making its bid or that of any of its legal, financial or other advisors, and, (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtor or the assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by the Debtor; and,

xi.   contains other information reasonably requested by the Debtor.

f.   Evidence of such Qualified Bidder's ability to provide adequate assurance of future performance of such contracts or leases (as required by section 365(f)(2)(B) of the Bankruptcy Code).

g.   A deposit ("Deposit") in an amount equal to ten percent (10%) of the amount of the bid in the form of a cashier's check drawn on a national bank chartered in the United States of America, made payable to the order of Steinhilber Swanson LLP Special Trust Account, delivered to counsel for EPS, or a wire transfer or ACH to the Steinhilber Swanson LLP Special Trust Account, established for this purpose, which will be returnable to the Qualified Bidder, as set forth in Paragraph J.  All Deposits will be held in the segregated trust account designated above.

Notwithstanding anything to the contrary herein, or in the APA submitted by the Stalking Horse, if any bid submitted by a Qualified Bidder includes material assets not included in the Stalking Horse Bid, or excludes material assets included in the Stalking Horse Bid, is accepted as a Qualified Bid by EPS, then: (i) at any time prior to the Auction, the Stalking Horse may, without terminating its current APA, submit a new APA (the "New APA") in substantially the same form as its current APA except for changes with respect to the purchase price to be paid in the scope of the assets and liabilities to be purchased, and any other modifications reasonably related to such changes; and, (ii) such New APA shall be deemed to be a Qualified Bid and the Stalking Horse would be deemed to be a Qualified Bidder with respect to the New APA and for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that bidders must satisfy to be a Qualified Bidder.

After the Bid Deadline, EPS management will analyze each Competing Bid based on the criteria detailed above to determine which bids will be treated as "Qualified Bids" entitled to participate at the Auction, based on the capability of the Qualified Bidder to close a transaction, the Competing Bid's impact on all constituents of the Debtor, and the amount of the Competing Bid.  SSLLP may, at any time after consulting with EPS, contact Qualified Bidders to discuss or clarify terms and to indicate any terms, which may need to be modified in order to conform the Competing Bid to a Qualified Bid or to negotiate terms.  SSLLP shall provide a list of Qualified Bids and each corresponding Bid Package to:  (a) counsel for the Stalking Horse, (b) counsel for the DIP Lender and (c) each Qualified Bidder no later than the earlier of one (1) day after the Bid Deadline and at least one (1) day before the Auction.  For the purposes of the Auction, the APA submitted by the Stalking Horse is a Qualified Bid and the Stalking Horse is a Qualified Bidder for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that bidders must satisfy to be a Qualified Bidder.  The Stalking Horse shall not be required to take any further action to participate in the Auction, or if Stalking Horse Bid is the Prevailing Bid (as defined below) or the Back-Up Bid (as defined below) to be named the Prevailing Bidder (as defined below) or the Back-Up Bidder (as defined below), as applicable.

After the Bid Deadline, the Debtor shall determine which Qualified Bid represents the then-highest or otherwise best bid (the "Initial Highest Bid" and the entity submitting such Bid, the "Initial Highest Bidder").  Prior to or at the start of the Auction, each Qualified Bidder that timely submitted a Qualified Bid or a Qualified Partial Bid will be advised of such Initial Highest Bid.

SSLLP and EPS management may, in their reasonable business judgment, reject any bid if such bid is, among other things:

a.  on terms that are more burdensome or conditional than the terms of the APA;

b.  not received by the Bid Deadline; and/or,

c.  is subject to any due diligence, financing condition, or other contingencies (including representations, warranties, covenants, and timing requirements), or an estimated time to close which materially affects the value of the bid; or,

d.  fails to comply with Section G.e.vi. above.

Any bid rejected pursuant to this Paragraph shall not be deemed to be a Qualified Bid and shall not be permitted to participate in the Auction.

## H.    AUCTION

1.  Qualified Bidders who are deemed to have submitted a Qualified Bid will convene on November 24, 2020, at 1:00 o'clock P. M. CST, at the office of SSLLP, or at such other location selected by SSLLP with written notice to each party that has submitted a Qualified Bid for the Auction (the "Auction").  The Auction may also be held by Zoom or some comparable video conferencing platform if the Seller so designates.

2.  If no Qualified Bid is timely received other than the Stalking Horse Bid, no Auction will take place.

3.  The Auction may be postponed by announcement by SSLLP, after consultation with the Stalking Horse, by not more than three (3) business days, except with the consent of the Stalking Horse.

The only persons or entities who will be permitted to bid at the Auction are the authorized representatives of each Qualified Bidder who submitted a Qualified Bid (the "Auction Participants").  While only the Auction Participants may bid at the Auction, the Auction may be attended by the Debtor, the Debtor's advisors, the U.S. Trustee, along with any other party the Debtor deems appropriate.  All creditors of the Debtor's estate shall be permitted to attend; *provided, however*, that in order to attend the Auction, a creditor must advise the Debtor in writing no later than 48 hours prior to the Auction; provided, further, however, that the Debtor may seek relief from the Bankruptcy Court in the event that they object to such creditor's attendance. Said notification shall be by email and addressed to m.fuchs@eps.aero and jsweet@steinhilberswanson.com and to vgeorge@steinhilberswanson.com .

7

4. The Debtor is authorized to conduct the Auction in accordance with such procedures and requirements as may be established at the discretion of the Debtor which rules may include the determination of the amount of time between Qualified Bids, whether to adjourn the Auction at any time and from time to time, the conduct of multiple rounds of open bidding with notice only to the parties entitled to attend the Auction, and to declare that the Auction has ended when no further bids are timely made or otherwise.

5. The Qualified Bid that is deemed the Initial Highest Bid shall be the first Qualified Bid to begin the Auction. The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid plus at least $100,000 (the "Minimum Bid Increment"). Thereafter, the Auction will continue in the manner set forth herein and as otherwise determined by the Debtor in accordance with these Bidding Procedures.

6. The amount of each subsequent Qualified Bid will be made known to all other Qualified Bidders in attendance at the auction.

7. When such bidding has ceased, the bids that are deemed by SSLLP, on behalf of the Debtor, to be the highest and best bid(s) will be announced at the close of bidding.

8. Subject to the provision set forth above, SSLLP, on behalf of the Debtor, may also conduct auctions for other assets or combinations of assets to determine which is the winning bid or bids.

9. The highest and best bid(s) is referred to herein as the "Prevailing Bid(s)" and the maker(s) of such bid(s) the "Prevailing Bidder(s)."

10. The next highest and best bid will be the "Back-Up Bid(s)" and the maker of the Back-Up Bid will be the "Back-Up Bidder(s)."

11. If the Stalking Horse Bid is not the Prevailing Bid or the Back-Up Bid, either of which ultimately becomes the successful buyer or as otherwise provided in the APA, the Break-Up Fee shall be paid and the Stalking Horse shall be entitled to the return of its Deposit as described in the APA.

12. No additional bids will be considered after the end of the Auction.

13. In determining which bid constitutes the "Prevailing Bid" or the "Prevailing Bids" and the "Back-Up Bid" or "Back-Up Bids," the Debtor will use its

reasonable business judgment and may consider, among other things: (i) the purchase price offered in the Qualifying Bid; (ii) the Qualified Bidder's financial situation and wherewithal; (iii) the probability of a prompt closing; (iv) the ability to demonstrate adequate assurance of future performance on all contracts and leases to be assumed; and, (v) the best interest of holders of claims and interests.  The Debtor may also consider different combinations of bids.

14.    EPS and SSLLP will inform all persons identified on the short service list concerning the sale process and the foregoing decision.

15.    **EACH QUALIFIED BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON EACH QUALIFIED BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE ASSETS HAS CLOSED OR THIRTY (30) DAYS AFTER THE SALE APPROVAL HEARING.**

16.    All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court with respect to the Debtor and its assets and to have waived any right to a jury trial in connection with any dispute relating to the Auction, the sale of the assets, and the construction and enforcement of the APA.

## I.    SALE APPROVAL HEARING

On November 30, 2020 at 10:00 a.m., CST, the Bankruptcy Court will hold a hearing (the "Sale Approval Hearing") at which the Debtor will seek Bankruptcy Court approval of the Prevailing Bid(s) and of the Back-Up Bid(s).  In the event that a Prevailing Bidder(s) cannot or refuses to consummate the sale because of the breach or failure on the part of the Prevailing Bidder(s), and not because of any default by the Debtor, the Debtor will be permitted to close with the Back-Up Bidder(s) on the Back-Up Bid(s) without further order of the Bankruptcy Court.  The Debtor's presentation to the Bankruptcy Court for approval of those particular bids did not constitute acceptance of any bids.  The Debtor has accepted a bid only when the Bankruptcy Court, following the Sale Approval Hearing, has approved the sale pursuant to a Final Order.  No additional bids will be considered at the end of the Auction.

## J.    CLOSING

Closing (the "Closing") shall occur within five (5) business days after the Bankruptcy Court has entered a final order approving the sale and other conditions are met, all consistent with the APA, subject to the right of the Debtor and the Prevailing Bidder or the Back-Up Bidder, as the case may be, to extend such date as consistent with the applicable APA(s).

Each Deposit submitted pursuant to these Bidding Procedures will be held in escrow until:

1.    As to other bidders, the selection of the Prevailing Bidder(s) and the Back-Up Bidder(s); or,

2.    As to the Back-Up Bidder(s), the earlier of 48 hours after Closing of the sale of the assets to the Prevailing Bidder(s) or thirty (30) days after the Sale Approval Hearing.

The Deposits received from the Prevailing Bidder(s) or the Back-Up Bidder(s), as the case may be, shall constitute liquidated damages in the event that the Bankruptcy Court approves the Asset Purchase Agreement to which the Prevailing Bidder(s) or Back-Up Bidder(s), as applies, is a party, but the sale is not consummated, such bidder's Deposit shall be forfeited to the Debtor and such forfeited Deposit shall constitute collateral of the DIP Lender, and be subject to the debtor-in-possession financing orders.

## K.    GENERAL

These Bidding Procedures are subject to modification from time to time by SSLLP as circumstances may warrant, after consultation with the Stalking Horse.  In the event that a material modification is not consented to by the Stalking Horse, such modification shall permit the Stalking Horse to withdraw its bid without any liability and to receive return of its deposit and to obtain payment of the Break-Up Fee and the Expense Reimbursement to the extent payable under the terms of the APA.  The Debtor shall promptly notify parties in interest and prospective bidders of any such modifications.  Except as provided in the APA, no bidder has any rights against the Debtor and its estate, the DIP Lender, or any of their respective professionals, advisors or agents by virtue of any modification of these Bidding Procedures, or by virtue of having or not having its bid accepted by the Debtor or approved by the Bankruptcy Court.

## L.    TERMS OF SALE

Sale of the assets shall be on an "As Is, Where Is" basis and without representation or warranties of any kind, nature or description by the Debtor or its agents, except as provided in an Asset Purchase Agreement accepted by the Debtor and approved by the Bankruptcy Court in a sale order.  All of the Debtor's right, title and interest in and to the assets shall be sold free and clear of all liens and encumbrances,

claims, and interests to the full extent available under Bankruptcy Code Section 363(f) including, without limitation, the interest of any secured creditor, unsecured creditor, equity interest holder, or any other person holding an interest in or claim against said assets with such interest to attach to the net proceeds of the sale.

## M.    RESERVATION OF RIGHTS

The Debtor may: (a) determine in its reasonable business judgment and based on the criteria outlined herein, which bids are the highest and best bids for the assets and in the best interest of the Debtor's estate; and, (b) reject at any time before entry of an order by the Bankruptcy Court approving a Prevailing Bid (or Back-Up Bid) any bid (other than the Stalking Horse Bid) that, in the Debtor's discretion, exercising its reasonable business judgment, is: (i) inadequate or insufficient based on the criteria outlined herein, (ii) not in conformity with these procedures whether the requirements of the Bankruptcy Code, or, (iii) contrary to the best interest of the Debtor and the Debtor's estate; and, (c) subject to the provisions of Paragraph K modify these procedures as set forth herein as required to best accomplish the sale of the assets of the debtor.